# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN BURTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) CAUSE NO.  1:12-cv-676-DKL-WTL |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ENTRY

Kevin Burton seeks judicial review of the Commissioner of Social Security's denial of his application for disability benefits under the Supplemental Security Income program ("SSI"), title XVI, of the Social Security Act.  For the reasons explained herein, the denial decision will be reversed and Mr. Burton's claim will be remanded to the Commissioner for further proceedings consistent with this Entry.

## Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).   Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If

the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th

Cir. 2004).  This limited scope of judicial review derives from the principle that Congress

has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely impaired as
> defined by the SSA regulations.  Nor may we reweigh evidence, resolve
> conflicts in the record, decide questions of credibility, or, in general,
> substitute our own judgment for that of the Commissioner.  Our task is
> limited to determining whether the ALJ's factual findings are supported by
> substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While

review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to result in death or has lasted or can be expected to last

for a continuous period of not less than 12 months".  42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).

A person will be determined to be disabled only if his impairments "are of such severity

that he is not only unable to do her previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The combined effect of

all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy.  20 C.F.R. § 404.1545.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled.  Fifth, considering the applicant's age, work

experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may still be used as an advisory guideline in such cases.  20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner

and a physician or other medical specialist. If the application is denied, the applicant may

request reconsideration review, which is conducted by different disability and medical

experts. If denied again, the applicant may request a hearing before an administrative law

judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request

the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or

declines to review the decision, then the applicant may file an action in district court for

judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision,

then the decision of the ALJ becomes the final decision of the Commissioner for judicial

review.

## Background

Mr. Burton alleges that he is disabled due to episodic vision loss stemming from

ocular migraines, limited mobility due to lumbar spinal issues, and breathing issues arising

from lung ailments. He has a history of spine, lung, and brain ailments. In March 2007, he

underwent two craniotomies for brain aneurysms. He alleges that he began to have his

vision problem, ocular migraines, after the brain surgery. In April 2006, Mr. Burton

underwent memory- and cognitive-skills testing; the results were mixed but showed some

decline in memory capacity since 2007. In August 2009, Mr. Burton reported lower back

pain to Dr. Winikates, neurologist. A CT scan revealed degenerative disc disease and he

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, et seq.). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

began physical therapy for his lumbar spine.  In July 2010, he was diagnosed with severe emphysema in the left lobe of his lungs.  In August 2010, he underwent an upper lobectomy.

Mr. Burton applied for SSI benefits in August 2009, when he was forty-four years old.  After the state agency denied his claim on initial and reconsideration reviews, Mr. Burton requested and received a hearing before an ALJ.  The ALJ denied his claim.  At step one, the ALJ found that Mr. Burton had not engaged in substantial gainful activity since his alleged onset date of August 31, 2009.  At step two, the ALJ found that Mr. Burton had the following severe impairments:  (1) status post January 2007 right front hemisphere aneurysm and March 2007 aneurysm clipping, (2) lumbar degenerative joint disease, and (3) lumbar spondylosis.  He found that Mr. Burton's alleged memory loss was not established as a cognitive impairment and his alleged emphysema was not a severe impairment.  At step three, the ALJ found that Mr. Burtons impairments, singly and in combination, did not meet or medically equal any of the listing of impairments.  He considered listings 1.04A and the mental listings, 12.00.

For steps 4 and 5, the ALJ determined Mr. Burton's RFC.  He found that Mr. Burton has the capacity to perform light work with the following restrictions:  no exposure to excessive dust, fumes, odor, temperature extremes, or wetness; no unprotected heights, heavy equipment, or operating machinery. The ALJ found that Mr. Burton has the capacity to carry out simple repetitive tasks, meaning unskilled tasks.  At step four, the ALJ found

that Mr. Burton could not perform his past relevant work as a construction laborer, which is classified as heavy work. At step five, the ALJ found that, considering Mr. Burton's RFC, age, education, and skills, there is a significant number of jobs in the national economy that he can perform and, therefore, he is not disabled. The specific jobs identified by the vocational expert were classifier (sorting clothes in a dry-cleaning shop) (5,500 positions in Indiana) and ticket checker (9,000 positions in Indiana).

## Discussion

1. **Hypothetical to the vocational expert — concentration, persistence, or pace.** In *Baker v. Astrue*, No. 4:10-cv-66-TWP-WGH, 2011 WL 3585613, *5-7 (S.D. Ind., Aug. 15, 2011), this Court, applying the rule of *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), held that an ALJ errs when he omits a claimant's mild limitation in functional ability from the hypotheticals that he poses to a vocational expert ("VE") at hearing. In the instant case, the ALJ concurred with the state-agency experts' opinions that Mr. Burton suffers from a moderate limitation in maintaining concentration, persistence, or pace, (R. 25, 518), yet he did not advise the VE of that limitation in his hypothetical, (R. 25).

The Court of Appeals for the Seventh Circuit held in *O'Connor-Spinner* that a VE must be specifically informed of limitations in concentration, persistence, or pace, *O'Conner-Spinner*, 627 F.3d at 619, but it did not go so far as to mandate the use of the exact words concentration, persistence, or pace. If the record reflects that the VE was already aware of the claimant's limitation — for example, by being present at the hearing and

hearing the testimony and discussion — or if "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the plaintiff's limitation would be unable to perform," then the ALJ does not err by not using the terms concentration, persistence, or pace. *Id.* Further, the court declared that, standing alone, an ALJ's limitation of a claimant to "simple, repetitive tasks" does not address limitations of concentration, persistence, or pace. *Id.*, at 620. In this case, the ALJ also did not include in his hypothetical to the VE his own restriction of Mr. Burton to simple, repetitive tasks, (R. 25), and the VE, participating in the hearing by telephone, did not hear any of the testimony or discussion before her testimony, (R. 24).

The ALJ concurred with the state-agency medical experts' finding that Mr. Burton has a moderate limitation of concentration, persistence, or pace. Because the ALJ, on his own, converted that functional limitation into a work restriction to simple, repetitive tasks — which does not necessarily accommodate the limitation — and because the ALJ omitted the moderate limitation from his hypothetical to the VE, the ALJ committed error and his step-five determination is not supported by substantial evidence.

**2. Hypothetical to the vocational expert — fumes and wetness.** Mr. Burton argues that the ALJ failed to ensure that the VE clearly excluded all jobs that did not meet the ALJ's RFC restrictions. Specifically, the ALJ wrote in his decision that Mr. Burton is restricted to light-level jobs without excessive fumes and excessive wetness. (R. 35.) The ALJ's hypothetical to the VE at the hearing excluded excessive fumes and any wetness

(without the qualifier "excessive").  (R. 25.)  The VE answered that, at the light-level of work, Mr. Burton could perform the job of classifier (sorting clothes in a dry-cleaning shop) of which there are 5,500 in the Indiana economy.  (R. 25-26.)  At that point, the following dialogue occurred between the ALJ ("Q") and the VE ("A"):

> Q  Okay, he's in a dry cleaner.  Isn't he going to be exposed to temperature extremes, wetness, possibly operating machinery?
>
> A  He would be away from the operating machinery, because he [would be] sorting the clothes.  He would not be putting them into the machines.
>
> Q  Okay, what else do you have?
>
> A  Without — everything else pretty much includes machinery, and/or wetness, and/or fumes.

(R. 26.)  The ALJ then asked about sedentary-level jobs that Mr. Burton could perform and the VE identified the job of ticket checker, of which there are 9,000 jobs in the Indiana economy.  (*Id.*)

Mr. Burton contends that the VE failed to answer the ALJ's questions about his exposure to temperature extremes and wetness in the classifier job — her answer was only about operating machinery — and that the ALJ failed to follow-up to obtain clarification. Mr. Burton argues that this constitutes material error because there is no assurance that the classifier job does not offer exposure to temperature extremes or wetness, a reasonable question even to the ALJ at the hearing.  Thus, the VE's testimony is unreliable and the ALJ's step-five determination is erroneous.

9

The VE probably answered the wetness question, *albeit* indirectly, by her answer to the next question.  The ALJ asked if there were any other jobs at the light level and the VE answered that there were not because "everything else"  involved machinery, wetness, and/or fumes.  Even so, she left the question about temperature extremes unanswered.[2]

The Court finds that this error is immaterial.  The VE testified to two jobs existing in the Indiana economy that satisfied the ALJ's defined RFC and restrictions:  classifier, at 5,500 jobs, and ticket checker, at 9,000 jobs.  Mr. Burton did not challenge the correctness of the VE's testimony regarding the ticket-checker jobs.  Neither the Social Security Act nor the Commissioner's regulations define a threshold amount for when the number of jobs becomes "significant."   However, decisions have found that 1,000 jobs, and fewer, constitute a significant number.  See *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993); *Rodriguez v. Astrue*, No. 11 Civ. 6977 (PAC) (DF), 2013 WL 3753411, *13-15 (S.D. N.Y., July 17, 2013); *Dameron v. Astrue*, No. 4:11-134-DGK-SSA, 2012 WL 4405298, *4 (W.D. Mo., Sept. 24, 2012).  According to this precedent, the 9,000 ticket-checker jobs existing in the Indiana economy constitute a significant number of jobs, thus rendering harmless any error that might taint the VE's testimony regarding the 5,500 classifier jobs.

---

[2] The ALJ did not ask the VE for clarification about the exposure to excessive fumes or odors presented by the classifier job.  He included both restrictions in his hypothetical to the VE and there is no reason to assume that she did not incorporate the restrictions into her answer.  In fact, in the follow-up question, the VE stated indirectly that the classifier job does not present an exposure to excessive fumes. (R. 25-26.)

**3. Ocular migraines.** Mr. Burton argues that the ALJ erred by failing to properly evaluate and fully credit his allegations of ocular migraines resulting in episodic vision loss. He contends that the ALJ misunderstood the nature of ocular migraines, confused them with his alleged headaches, and did not have good reasons for not including the resulting episodic vision loss in his RFC restrictions. The ALJ did not find ocular migraines to be a severe impairment at step two but, because he continued beyond step two, it was not error, as long as he considered the alleged impairment and its credible effects later in the process. Contrary to Mr. Burton's argument, the ALJ did include an RFC restriction against operating machinery, which was one of the functional restrictions that Mr. Burton's ophthalmologist, Dr. Wilson, prescribed in relation to his ocular migraines. (R. 35, 40, 712.) Also, contrary to Mr. Burton's argument, while the ALJ's articulation is a bit vague in some spots, it is apparent that he did not confuse Mr. Burton's pain-free ocular migraines with his alleged painful headaches; he clearly distinguished the two in his decision. (R. 41.) Mr. Burton's remaining argument is that the ALJ's credibility determination is unsupported and erroneous.

Because ALJs are in the best positions to judge claimants' credibility, their credibility determinations are due deference and will not be overturned unless clear evidence shows that they are patently erroneous. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). Mr. Burton complains that the ALJ did not mention, and, therefore, must not have considered, three items of evidence that he

11

contends are material to the credibility of his allegations about his ocular migraines. However, an ALJ need not mention every item of evidence or every piece of content in every item of evidence.  What is important is that he build a logical bridge between the evidence and his conclusions and articulate his reasoning sufficiently to permit the court to trace the path of his reasoning.  The ALJ was aware of and described Mr. Burton's allegations of the symptoms caused by his ocular migraines, including periods of "blackouts" when he lost all vision, and of his treatments by Dr. Wilson.  Mr. Burton has not shown that the SSA employee's report of his experiencing a blackout when submitting his application or Mr. Burton's description of episodes of blindness in his SSA forms differed materially from evidence that the ALJ specifically mentioned in his decision.  In short, Mr. Burton has not shown that these specific pieces of evidence merited specific address by the ALJ.  In fact, the ALJ described witnessing Mr. Burton's alleged blindness at the hearing and found it not credible.  Thus, the ALJ's failure to mention the SSA employee's report of another incident is not material and the Court has no basis to reject the ALJ's credibility determination based on his personal observation at the hearing.

The Court will not reweigh the evidence or make its own credibility determination. Mr. Burton has not shown that the ALJ's credibility determination pertaining to his ocular migraines was erroneous.

**4.  Tinkering with cars.**  The ALJ found that Mr. Burton's statement that he "tinker[s] with cars in his garage" indicated that, "despite his impairments, he was able to

perform some work-related tasks, including tasks that were complex and detailed or which involved bending at work around operating machinery" and that his alleged impairments "would not be expected to cause symptoms of the intensity, frequency and restriction that he asserts." (R. 39-40.) There is no support in the record for the ALJ's conclusion. He did not describe the details of what Mr. Burton does when he "tinkers" with cars — *e.g.*, what tasks he performs, how long he takes to perform them, whether he takes breaks and for how long — and, thus, did not and cannot describe why that "tinkering" shows Mr. Burton's ability to perform complex or detailed tasks, bending, being around unidentified operating machinery (from which he restricted Mr. Burton, at any rate), sufficiently to sustain work in a workplace. The ALJ also offers only his conclusion that this unidentified "tinkering" is inconsistent with the alleged intensity of Mr. Burton's symptoms. The ALJ has failed to build the bridge in this case and must re-evaluate and re-articulate his credibility conclusion to this extent.

**5. Poor work history.** The ALJ drew a negative credibility inference from years of zero or very poor earnings in years before his alleged onset date, from 1996 through 2003. Absent an explanation by a claimant, an ALJ may infer that a lack of work was due to reasons other than disability. *See Dupree v. Astrue*, No. 1:10-cv-1450-TWP-TAB, 2011 WL 5434089, *8 (S.D. Ind., Nov. 8, 2011). Mr. Burton argues that the ALJ's inference is erroneous because he "may have had some very good reasons for not working in those years, or he may not have. We do not know. There is no evidence on the issue." (*Plaintiff's*

*Brief* at 30.)  This was Mr. Burton's opportunity to proffer any explanations for his lack of work that would contradict the ALJ's inference, but he did not do so.  The Court will not remand without some indication that a different inference is likely or even possible.  Thus, Mr. Burton has not shown error by the ALJ.

**6. Failure to report income tax.**  The ALJ found that "the record implies that the claimant likely was supporting himself, but not reporting income for tax purposes, which places his credibility and motivation into question, and raises issues so far as what capacities he actually retains despite his impairments."  (R. 41-42.)  None of these inferences are explained by the ALJ:  he does not indicate what evidence in the record implies that Mr. Burton was supporting himself (he previously noted that he was living with his parents) or that he failed to report earnings for tax purposes.  Speculation is not substantial evidence.  *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 125 (7th Cir. 2000).  This credibility finding by the ALJ is erroneous and must be reconsidered.

**7. Driving ability.**  The ALJ noted that, as recently as March 31, 2009, Mr. Burton continued to drive, "signifying that he saw well enough to operate a motor vehicle to negotiate street conditions.  This inconsistency seems material and goes to the heart of the treating source opinion."  (R. 42 (citation omitted).)  The "treating source opinion" apparently has reference to Dr. Wilson's September 2009 opinion letter stating that Mr. Burton is "unable to drive".  (R. 712.)  The ALJ did not explain with what he found Mr.

14

Burton's driving to be inconsistent.  Mr. Burton alleges episodic loss of vision when he experiences an ocular migraine, which usually manifests by a gradual narrowing of the visual field to tunnel vision and ultimately to blindness for various periods of time.  He testified that he drives only with someone else in the car in case he experiences an ocular migraine.  He did not allege an inability ever to drive or permanent poor vision such that he could never negotiate street conditions.  Moreover, Dr. Wilson's opinion letter also said neither.  Instead, Dr. Wilson wrote: "*When these episodes occur* he is unable to drive and would be unable to operate heavy machinery."  (R. 712 (emphasis added).)  The ALJ had no reasonable basis for drawing a negative credibility inference from Mr. Burton's driving.

## Conclusion

The Commissioner's decision denying Mr. Burton's application for disability benefits will be **REVERSED** and his claim **REMANDED** to the Commissioner.  On remand, the Commissioner shall, consistent with this Entry, reconsider, re-evaluate, and re-articulate:

1.  The ALJ's conversion of Mr. Burton's moderate limitation in concentration, persistence, or pace into a functional limitation to simple, repetitive tasks without explanation or apparent supporting medical evidence, and the ALJ's failure to otherwise inform the vocational expert of Mr. Burton's moderate limitation in concentration, persistence, or pace when posing his hypothetical.

2.  The ALJ's unsupported finding that Mr. Burton's "tinkering" with cars was

inconsistent with his symptom statements and the ALJ's unreasonable negative credibility inference therefrom.

**3.** The ALJ's unsupported negative credibility inference drawn from Mr. Burton's assumed unreported income for tax purposes.

**4.** The ALJ's unsupported negative credibility inference drawn from Mr. Burton's continued driving.

**DONE this date:** 09/30/2013

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

16